37145. JONES *v.* DIXIE DRIVE IT YOURSELF SYSTEM, ATLANTA COMPANY, INC., *et al.*

DECIDED MAY 13, 1958—REHEARING DENIED MAY 28, 1958.

*Hurt, Gaines, Baird, Peek & Peabody, W. Neal Baird, James A. Stanfield, Parker & Parker,* for plaintiff in error.

*T. J. Long, Ben Weinberg, Jr.,* contra.

TOWNSEND, Judge. It is alleged that Dixie Drive It Yourself System is engaged in the business of renting automobiles; that

under a standing rental plan automobiles were provided on request to Midwest & Southern Builders; that Imogene Blair was instructed by Midwest to procure an automobile pursuant to this rental plan; that she obtained it from the defendant's garage, drove off on her employer's business, and as a result of her negligence injured the plaintiff; that at the time Dixie delivered the automobile to her it made no inquiry as to her ability or competency and did not ascertain whether she had a license to drive an automobile; that as a matter of fact she was an incompetent driver and did not have a license to drive, that in the exercise of ordinary care it should have anticipated that said defendant Imogene Blair was incompetent to drive and that the automobile operated by her was likely to become a dangerous instrumentality, and that by failing to require her to exhibit a legal operator's license before allowing her to remove the car, knowing that it was about to be operated on the public streets, the defendant was guilty of negligence per se in violating Code (Ann.) § 92A-9916 which provides as follows: "It shall be a misdemeanor for any person to lend or rent to another a motor vehicle knowing the same is about to be operated upon the public roads or highways in this State, or upon the public streets of any incorporated village, town or city in this State, unless the person shall exhibit a legal operator's or chauffeur's license."

In *Huckabee* v. *Grace*, 48 *Ga. App.* 621, 632 (173 S. E. 744) it was held: "(a) Actionable negligence consists in a violation of some duty owed to another person; (b) in order for the violation of some statutory duty to be negligence per se, the person claiming it as such must be within the class for whose benefit the statute was passed; (c) if there is no person upon whom the violation of the statute can operate, there is no breach of duty; and (d) the court in determining whether the violation of a statutory requirement is negligence per se as to the person complaining thereof upon which a cause of action will rest, will look to the particular statute in respect to its purposes, that is, the evils it was intended to guard against and the persons it was intended to protect." In that case it was held that an ordinance regulating the speed of vehicles in crossing intersections was enacted for the protection of persons using such streets. In

*Whitley Construction Co.* v. *Price*, 89 *Ga. App.* 352 (79 S. E. 2d 416), statutes giving to the State Highway Department authority to set special restrictions on the speed of vehicles under certain circumstances, and the erection of signs restricting speed in an area designated as a school zone were declared to be for the benefit of all persons using the highway within such zones. In *London* v. *Atlanta Transit Co.*, 91 *Ga. App.* 753, 757 (87 S. E. 2d 103), and *Gleason* v. *Rhodes Center Pharmacy*, 94 *Ga. App.* 439, 449 (95 S. E. 2d 293), laws placing a duty on motorists to signal a stop were applied as rules for the benefit of vehicles following on the highway. In *Williams* v. *Grier*, 196 *Ga.* 327, 336 (26 S. E. 2d 698), it was held that a violation of ordinances prohibiting the parking of motor vehicles in no-parking zones constituted negligence per se as to others using the streets, as they were within the class of persons protected thereby. In *Bozeman* v. *Blue's Truck Line*, 62 *Ga. App.* 7, 9 (7 S. E. 2d 412) and *Washington* v. *Kemp*, 97 *Ga. App.* 235 (102 S. E. 2d 910) a statute making it a crime to park on a highway within 8 feet of the center line was held enacted for the benefit of all persons meeting or following the parked vehicle. In *Sprayberry* v. *Snow*, 190 *Ga.* 723 (10 S. E. 2d 179) relating to violation of that statute and others relating to control of the automobile and use of lights, the court said (p. 727): "All those laws were designed for safety of the general public in relation to person or property or both. They all contemplate safety for all users of the highways, and do not exclude pedestrians." From the above, and applying the yardstick of the *Huckabee* case, it follows as a general rule that statutes controlling the use and operation of vehicles on the public highways generally are for the protection of persons and property on or near such highways, and that a person, whether a pedestrian or not, and whether on a street, highway, intersection, or adjacent sidewalk, who is injured as the proximate result of the violation of such law is within the class of persons protected and may allege the violation as negligence per se as to him. Code (Ann.) § 92A-9916 making it unlawful to rent a motor vehicle about to be operated on a public road without first ascertaining that such person has an operator's license is a part of the Act of 1937 (Ga. L. 1937, p. 322), concerning which it was

held in *Nelson* v. *State*, 87 *Ga. App.* 644, 647 (75 S. E. 2d 39) as follows: "To operate an automobile without first obtaining [an operator's] license is now an infraction of our laws which are enacted for the public safety to regulate the use of our public streets and roads and to make them more safe for persons to travel. See Ga. L. 1937, supra, as amended. This is wise legislation, designed for our safety and protection. Its purpose is to prevent indiscriminate driving of motor vehicles of any kind upon Georgia's vehicular traffic routes by inexperienced, incompetent, or improper persons. One of the most serious hazards of modern everyday life is the injury and damage; daily occurring in this State and elsewhere, resulting from the careless, incompetent, and unlawful operation of automobiles and other motor vehicles along the roads and highways. . . Georgia's lawmakers, to curb this modern menace and lessen the casualties resulting therefrom, enacted our traffic laws (Code § 68-301 et seq.) and have now sought to eliminate, so far as possible, the inexperienced, incompetent, and criminal operation of such vehicles by requiring licenses to drive, the right to obtain which is dependent upon one's ability to drive an automobile." It may therefore be concluded that the plaintiff here is within that class of persons sought to be potected by Code (Ann.) § 92A-9916.

It remains to be decided whether or not such violation of duty toward the plaintiff enters into the proximate cause of his injuries so that a cause of action may be sustained. The defendant in error strongly contends that it does not. In *Aycock* v. *Peaselee-Gaulbert Paint & Varnish Co.*, 60 *Ga. App.* 897 (5 S. E. 2d 598), a petition against an employer alleging negligence on the part of one of its salesmen who was an unlicensed driver was held subject to general demurrer where it did not appear that the driver was within the scope of his employment at the time, or that he was in fact incompetent, or that the failure to have a driver's license had any causal connection with his negligence in injuring the plaintiff. *Gulf Oil Corp.* v. *Stanfield*, 213 *Ga.* 436 (99 S. E. 2d 209) supports the general rule that a breach of duty to the State is not actionable on the part of an individual unless it enters into the proximate cause of his injuries. In *Windsor* v. *Chanticleer & Co.*, 89 *Ga. App.* 116, 118

(78 S. E. 2d 871) it was held: "The mere employment of one to drive knowing that he does not have a driver's license, does not constitute actionable negligence." See also *Andrews* v. *Lofton*, 80 *Ga. App.* 723, 728 (57 S. E. 2d 338). In *Flint Explosive Co.* v. *Edwards*, 84 *Ga. App.* 376, 391 (66 S. E. 2d 368), a case involving the obtaining of a license for the use of explosives, this court stated that in an action for simple negligence, failure of the defendant to have a license to do the thing, the negligent performance of which is alleged to be the cause of the injury, is not admissible, since whether or not the defendant had a license is not relevant or material on the question of whether he was negligent and whether his negligence caused the plaintiff's injuries. In *Callaham* v. *Carlson*, 85 *Ga. App.* 4 (67 S. E. 2d 726), failure to produce a proper certificate regarding an elevator was held to have no causal connection with the damage resulting from its negligent operation. The obvious distinction is as follows: whether or not the defendant driver has a license to operate the vehicle which injures the plaintiff is not determinative of the driver's liability, for unless he has been negligent in its operation he has no liability and if he has been negligent in its operation that fact, and not the fact that he had no license, is what gives rise to the cause of action. Where a person other than the defendant himself is jointly sued on the theory that such other person procured or permitted the operator to drive without a license there is alleged against such third person an independent act of negligence on his part which must be shown to have concurred with that of the driver in his negligent operation of the vehicle. One who knowingly turns an automobile over to an incompetent driver commits such an independent act of negligence as renders him a joint tortfeasor, and in such a case the fact that the driver is untrained and has not been licensed to drive is material and relevant. *Medlock* v. *Barfield*, 90 *Ga. App.* 759 (84 S. E. 2d 113). An incompetent driver may have obtained a driver's license, and an unlicensed driver is not necessarily incompetent. Therefore, as held in *Windsor* v. *Chanticleer & Co.*, 89 *Ga. App.* 116, supra, the employment of an unlicensed driver is not of itself actionable negligence, so as to hold the employer liable in a situation where he is not otherwise liable

under the doctrine of respondeat superior, and the question of whether he would be liable as a lender of such vehicle was not considered or discussed in that case. There is no statutory duty on the part of an employer to ascertain whether his employee has a license to operate his motor vehicle. There is, on the other hand, a specific duty created by law under Code § 92A-9916 on the part of a person renting automobiles to ascertain whether or not the driver has an operator's license, and to withhold the vehicle unless such license is exhibited to him. There was a positive duty on the part of the defendant under this law to withhold the vehicle from the codefendant Imogene Blair; had it done so, Miss Blair would not have obtained and driven the car so as to injure the plaintiff. While only constructive knowledge of the incompetence of the codefendant on the part of Dixie is alleged, and while, under the above cited cases, it requires actual knowledge of such incompetence on the part of the owner allowing his vehicle to be used by another on the theory of common-law negligence, or negligence as a matter of fact, yet the situation is different where the driver is in fact incompetent and the owner is in law bound to check her qualifications to the extent of ascertaining that she has a license to drive.

For the plaintiff to recover from this defendant upon the trial of the case it will of course be necessary for him to prove the allegations of his petition, including the incompetence of the driver to whom the vehicle was rented, since, if the driver were not in fact incompetent, the failure to ascertain whether or not she had a driver's license would not enter into the proximate cause of the injuries inflicted. But, by failing to check on the driver's qualifications in conformity with statutory requirements, the defendant would be precluded from the defense that it did not have actual knowledge of such incompetence on the part of the driver.

The plaintiff being within the class of persons coming within the protection of the statute, a cause of action was set forth against Dixie Drive It Yourself System, Inc., and the trial court erred in sustaining its general demurrer and dismissing it as a party defendant.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*