A92A2377. MURPHY v. BLUE BIRD BODY COMPANY.
(429 SE2d 530)

POPE, Chief Judge.

Plaintiff James P. Murphy appeals the trial court's grant of summary judgment in favor of defendant Blue Bird Body Company ("Blue Bird").

Blue Bird entered into a contract with defendant Applied Coating Technologies, Inc. ("ACT") whereby ACT agreed to install a paint finishing system at Blue Bird's LaFayette Plant (R. 631-36). One of the components of the system installed by ACT was a suction fan. After the system became operational, employees of Blue Bird noticed

the fan was noisy and contacted the president of ACT, defendant Michael Jenkins, to request that he repair the fan. Jenkins hired plaintiff to come to the Blue Bird plant on a Saturday, while the plant was not in operation, to repair the fan.

Jenkins met plaintiff at the plant and let him inside using a key provided for Jenkins' use during the installation of the paint finishing system. Although plaintiff testified he saw two Blue Bird employees outside the plant when he was waiting for Jenkins to arrive, neither Jenkins nor plaintiff observed Blue Bird employees inside the plant while they worked on the fan. Plaintiff first examined an area of the fan accessible by stairs. Plaintiff then determined he also needed to examine the outside of the fan, which was not accessible by stairs. He asked Jenkins for a ladder to use to reach the outside of the fan. Jenkins offered instead to get a forklift and a basket for plaintiff to use to reach the outside of the fan. Jenkins then retrieved a forklift and parts basket owned by Blue Bird. Plaintiff entered the parts basket with the tools he needed and Jenkins used the forklift to lift plaintiff to the outside area of the fan. Although Jenkins and plaintiff offer different theories or explanations about why the parts basket fell from the forklift, it is undisputed that the basket was not attached in any manner to the forklift and while plaintiff was working on the fan, the basket fell from the forklift and plaintiff was injured when he fell from the basket.

Plaintiff filed suit against Jenkins, ACT and Blue Bird seeking compensation for his injuries. Jenkins and ACT also filed cross-claims against Blue Bird. Blue Bird moved for summary judgment on all claims asserted against it in plaintiff's complaint and the cross-claims. The trial court granted that motion. Plaintiff appeals the grant of summary judgment to Blue Bird on plaintiff's complaint.

1. Plaintiff contends the superior court erred in granting summary judgment to Blue Bird because genuine issues of material fact remain concerning whether Blue Bird owed a duty to the plaintiff.

When deciding what duties, if any, Blue Bird owed to plaintiff, it is first necessary to examine the relationship between Blue Bird and plaintiff. That relationship hinges in part on the relationship between Blue Bird and ACT and its president, Jenkins. Although plaintiff does not argue Jenkins was an employee of Blue Bird, plaintiff insists that Jenkins was controlled by Blue Bird. In *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904 (219 SE2d 593) (1975), cert. denied, 425 U. S. 907 (96 SC 1501, 47 LE2d 758) (1976), this court, citing with approval the Restatement of Agency 2d, § 220 (2), set forth ten factors that should be considered when deciding whether one acting for another is an independent contractor or an employee. Those factors include: "(1) the extent of control which, by agreement, the employer may exercise over the details of the work; (2) whether or not the one

employed is engaged in a distinct occupation or business; (3) whether or not the work to be performed is usually done under the direction of the employer or by a specialist who needs no supervision; (4) the skill required in the particular occupation; (5) whether the employer supplies the tools and the place of work for the one employed; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work to be performed is a part of the regular business of the employer; (9) whether or not the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business." Id. at 906.

Applying these factors to the undisputed facts of this case, we hold ACT was an independent contractor employed by Blue Bird and ACT's president, Jenkins, acted as an independent contractor in employing plaintiff to repair the fan. Blue Bird hired ACT and Jenkins for the limited purpose of installing a paint finishing system. The only evidence of any control exercised by Blue Bird is Jenkins' testimony that Blue Bird insisted ACT's installation of the system not interrupt production. For that reason, Jenkins and the crew he employed to install the system usually began work after Blue Bird stopped its operations at the plant and stopped working when the production shift began. Blue Bird employees were generally not present during the installation and did not exercise control over the details of installing the system. The contract between the parties did not give Blue Bird the right to control the manner of installation. The installation of a paint finishing system is not the regular business of Blue Bird. ACT's principal, Jenkins, had experience installing such systems and all evidence indicates Blue Bird properly relied upon his expertise in installing the system. Neither Jenkins nor any member of the installation crew was ever on Blue Bird's payroll, and ACT was paid a lump sum for the system and its installation. Although there is evidence that Blue Bird lent certain tools and equipment to Jenkins to use for the installation, Jenkins and his crew provided most of the tools needed for the installation. The parties did not contract for Blue Bird to supply tools to Jenkins and tools were lent to Jenkins by Blue Bird only after Jenkins was unable to procure them elsewhere in a reasonable time. Thus, all evidence shows Blue Bird allowed Jenkins to use certain equipment as an accommodation rather than as a contractual right.

2. Plaintiff argues that even if ACT and Jenkins were independent contractors of Blue Bird, this case falls outside the general rule that landowners are not responsible for the negligence of their independent contractors. "It is, of course, the rule that the employer of an independent contractor owes the contractor's employees [or one hired by an independent contractor] the ubiquitous duty of not imperiling

their lives by [its] own affirmative acts of negligence. [Cits.] It is also the general rule that the independent contractor's employer is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety. [Cits.] As stated in [OCGA § 51-2-4]: 'The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer.' It should be noted, however, that under the statutory law of Georgia, . . . there are recognized exceptions to this general rule. [Cits.]" (Indentions omitted.) *United States v. Aretz*, 248 Ga. 19, 24-25 (280 SE2d 345) (1981).

The exceptions to that general rule of no liability are codified at OCGA § 51-2-5. Plaintiff relies upon the exception established by subsection (5) of that Code section which provides: "An employer is liable for the negligence of a contractor: . . . (5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference. . . ." Particularly, plaintiff argues his injury is traceable to Blue Bird's interference which occurred when Blue Bird agreed to supply Jenkins with the use of a forklift and the forklift supplied to Jenkins was defective in that adequate warnings were not maintained on the forklift.[1]

The evidence shows Blue Bird allowed Jenkins to use forklifts during the installation process. Jenkins originally asked to borrow a forklift for the limited purpose of unloading materials. Although there is evidence that Blue Bird knew Jenkins continued to use forklifts during the installation process, there is no evidence any Blue Bird employee ever witnessed Jenkins or other members of the installation crew lifting anyone using a forklift or that Blue Bird ever authorized use of their forklifts for that purpose. No one employed by Blue Bird knew or had reason to know that Jenkins would use a forklift owned by Blue Bird to lift plaintiff for repair work. No Blue Bird personnel was present at the time of the accident. Jenkins testified during his deposition, "I never told Blue Bird that I would need their assistance or make them aware that they would need anything to elevate anybody to fix the fan." Although Jenkins testified that Blue Bird personnel had general knowledge that someone would be coming on the date of plaintiff's accident to repair the fan, Jenkins testified he assumed the fan could be repaired by accessing the inside portion that

---

[1] The argument that adequate warnings were not maintained on the forklift will be discussed in Division 5 of this decision.

could be reached by stairs; therefore, there is no reason to believe Blue Bird would anticipate Jenkins would need to lift plaintiff.

Furthermore, there is no evidence that Blue Bird designated which forklift Jenkins should use to lift plaintiff. Jenkins testified that initially Blue Bird designated one forklift for his use during the installation process, but that Blue Bird's other forklifts were used during the installation process as they became available. In fact, Jenkins testified he must have personally used at least one forklift other than the one in question during the installation process.

The undisputed evidence shows that on the day of plaintiff's accident, Jenkins made an independent decision that a forklift should be used to lift plaintiff to the outside of the fan. He then went to the area where Blue Bird kept its forklifts charged and chose a forklift to use for that purpose. Plaintiff's argument that Blue Bird interfered by designating which forklift Jenkins should use and that his injuries are traceable to that interference must fail.

3. Plaintiff contends Blue Bird breached its duty to plaintiff to keep the premises safe. It is well-settled that an owner or occupier of land is liable in damages to invitees who come upon the land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. *Amear v. Hall*, 164 Ga. App. 163, 166 (2) (296 SE2d 611) (1982). Accordingly, an owner who has either actual or constructive knowledge of defects or dangers on the premises has a duty to warn others coming on the premises who do not have knowledge of the defects and/or dangers and who through the exercise of ordinary care would not discover them. Id. Liability does not extend from ownership alone, but only from the breach of this duty. Id.

In this case, however, plaintiff does not contend and the record does not reflect that the *premises* were unsafe, at most he contends the forklift in question which was located on the premises, was allegedly unsafe or used in an unsafe manner. The forklift in question was not a part of the premises or a fixture thereto. Accordingly, plaintiff's argument that Blue Bird breached its duty to plaintiff to keep the premises safe must fail under the facts of this case.

4. Plaintiff next argues that Blue Bird breached its duty to provide safe equipment; specifically, plaintiff argues Blue Bird failed to provide a safe forklift to Jenkins. Plaintiff bases this argument on the Restatement of Torts 2d, § 388, which provides: "One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is

supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Plaintiff's reliance on § 388 is misplaced under the facts of this case. This argument must fail for many of the same reasons we refused, in Division 2, to hold Blue Bird interfered with Jenkins' work and that plaintiff's injuries are traceable to such interference. Construing the evidence in the light most favorable to plaintiff, the evidence shows no one employed by Blue Bird knew or had reason to know that Jenkins would use a forklift owned by Blue Bird to lift plaintiff. No Blue Bird personnel was present at the time of the accident. Although Jenkins testified that Blue Bird personnel had general knowledge that someone would be coming on the date of plaintiff's accident to fix the fan, Jenkins testified he assumed the fan could be repaired by accessing the inside portion that could be reached by stairs. Jenkins originally asked to borrow a forklift for the limited purpose of unloading materials. Although there is evidence that Blue Bird knew Jenkins continued to use forklifts during the installation process, there is no evidence any Blue Bird employee ever witnessed Jenkins or other members of the installation crew lifting anyone using a forklift or that Blue Bird ever authorized use of their forklifts for that purpose. With regard to the day of the accident, Jenkins testified during his deposition, "I never told Blue Bird that I would need their assistance or [made] them aware that they would need anything to elevate anybody to fix the fan." Because plaintiff failed to show Blue Bird supplied the forklift for the purpose for which Jenkins used it in this case, or had any knowledge that Jenkins would use the forklift for this purpose, plaintiff's reliance on § 388 of the Restatement is misplaced. See *Dupree v. Keller Indus.*, 199 Ga. App. 138 (2) (404 SE2d 291) (1991).

5. Plaintiff also contends Blue Bird breached its duty of reasonable care by failing to warn plaintiff of the danger of being lifted by the forklift. Plaintiff asserts that if Blue Bird had maintained adequate warnings on the forklift against the danger of riding on a forklift, he would have realized the danger and not allowed Jenkins to lift him using the forklift. In support of this argument, plaintiff offered the affidavit of a human factors psychologist, who opined that if appropriate warnings had been provided to the plaintiff or to the operator the accident could have been avoided.

The evidence shows that the forklift used to lift plaintiff had at least two warning labels on it. One was located inside the operator's cage. That warning label contained the following pertinent language: **"USE COMMON SENSE:** Never transport people on any part of the truck. To lift people use secured safety platform. Allow no one

under or near lift mechanism. . . ." Jenkins testified he remembered seeing this warning label but did not read it. In fact, Jenkins testified that during the installation process he had used a forklift without incident in the same manner as he was using it when plaintiff was injured.

There was also evidence that although the forklift in question originally had a warning label posted on the mast concerning people riding on the tines, that warning had become obliterated by the use of a chain on the forklift. Plaintiff testified he did not observe a warning on the forklift.

*Sutton v. Sutton,* 145 Ga. App. 22 (243 SE2d 310) (1978) is the only case cited by plaintiff in the section of his brief concerning Blue Bird's alleged duty to warn. That case is cited as authority for the general rule that "an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known. [Cits.]" Id. at 24-25. In *Sutton,* this court held a father had a duty to warn the plaintiff, his son, of the dangerous nature of a bull, which the father had knowledge of because earlier in the day, before he enlisted the aid of the plaintiff to capture the bull, the bull had charged another son. Id. at 25-26.

Unlike the *Sutton* case, there is no evidence that Blue Bird was aware of or should have been aware that Jenkins would use the forklift in an improper manner. There is no evidence that Blue Bird personnel ever observed Jenkins or any of his crew using the forklift to lift people. Even though Jenkins testified that during the installation process crew members used forklifts to lift other members of the crew on a daily basis, the great majority of the installation work was done at a time that no Blue Bird employees were present in the plant. A warning label was located inside the forklift in question which warned the operator of this specific danger, but Jenkins testified he did not read it. Under the facts of this case, we hold Blue Bird did not owe plaintiff a duty to warn him of the dangers of being lifted in an unsecured basket on a forklift because this was not a danger Blue Bird was aware of or had reason to anticipate.

6. Finally, plaintiff argues Blue Bird breached its duty to plaintiff as an invitee on the premises to select a competent operator of the forklift. Essentially, plaintiff argues Blue Bird breached a duty to plaintiff by negligently entrusting a forklift to Jenkins. "Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with *actual* knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness." (Citations and punctuation omitted.) *Viau v. Fred Dean, Inc.,* 203 Ga. App. 801, 803 (418 SE2d 604)

(1992). Contrary to plaintiff's assertions otherwise, Blue Bird's liability to plaintiff cannot be premised on Blue Bird's failure *to inquire* about Jenkins' experience using forklifts. See *Worthen v. Whitehead,* 196 Ga. App. 678 (396 SE2d 595) (1990). The evidence is undisputed that Blue Bird had no knowledge of Jenkins' training or experience with forklifts. There is also no evidence that anyone from Blue Bird ever noticed Jenkins or any member of the installation crew using a forklift in an unsafe manner.

Plaintiff argues that the standard applied in negligent hiring cases, rather than that applied in negligent entrustment cases, should be applicable in this case. We do not agree. In support of this argument plaintiff relies upon our decision in *Cherry v. Kelly Services,* 171 Ga. App. 235 (319 SE2d 463) (1984). In that case, we noted "[t]he standard in negligent hiring cases is whether 'the hirer knew, or in the exercise of ordinary care should have known, that the servant was incompetent and that the incompetency resulted in damage to the party to whom the servant was hired.'" (Citations and emphasis omitted.) Id. at 236 (2). In *Cherry,* the employee of a temporary agency was entrusted with a vehicle while employed by a client of the temporary agency. The temporary agency, although it did not have knowledge of the employee's history of reckless driving, had knowledge of one of the employee's traffic violations. Therefore, we held a question of fact remained concerning whether the temporary agency should have inquired further. Id.

In *Cherry,* the *employee* was hired by the temporary agency to work with the agency's clients. In this case, however, Blue Bird hired an independent contractor, ACT, to install a system as a turn key operation. ACT's president, Jenkins, had little contact with Blue Bird employees, as no Blue Bird employees worked with Jenkins in installing the system. Jenkins employed all persons who worked with him in installing the system. Jenkins also hired plaintiff to repair the fan. Clearly Blue Bird breached no duty owed to plaintiff by hiring ACT.

The evidence adduced in support of Blue Bird's motion for summary judgment pierced plaintiff's pleadings and plaintiff failed to come forward with specific facts establishing how Blue Bird breached any duty owed to plaintiff to establish the existence of a genuine issue of material fact for jury resolution. The trial court, therefore, correctly granted summary judgment in favor of Blue Bird on plaintiff's claims.

*Judgment affirmed. Carley, P. J., and Johnson, J., concur.*

DECIDED MARCH 16, 1993.

*Sweat & Giese, David R. Sweat, Jeffrey A. Johnson,* for appel-

lant.

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., Thomas W. Rhodes, Cheryl O. Thorpe, Stacey, Sanders & McAlpine, James M. Sanders*, for appellee.